**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TRACY W.,**

                       **Plaintiff,**

      v.                                          **8:18-CV-1311**
                                                             **(TJM)**

**COMMISSIONER OF SOCIAL SECURITY,**

                       **Defendant.**
_____

**THOMAS J. McAVOY,**
**Sr. U. S. District Judge**

## DECISION & ORDER

Plaintiff Tracy W. brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of Social Security denying her application for benefits. Plaintiff alleges that the Administrative Law Judge's ("ALJ") decision denying her application for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

### I. PROCEDURAL HISTORY

Plaintiff applied for Title II Social Security benefits on August 7, 2014. See Social Security Administrative Record ("R"), dkt. # 10, at 272-278. The Social Security Administration denied Plaintiff's application on September 15, 2014. Id. at 130, 144-147. Plaintiff appealed, and Administrative Law Judge John J. Ramos held a hearings on April 28, 2016, February 14, 2017, and August 10, 2017. Id. 63-129. The ALJ issued an

1

unfavorable decision on August 17, 2017. See R. 8-30. Plaintiff appealed, and the Social Security Appeals Council denied her request for review on September 5, 2018. Id. at 1-4. Plaintiff then made a timely application to US District Court. This Court has jurisdiction over the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. FACTS

The Court will assume familiarity with the facts and set forth only those facts relevant to the Court's decision in the body of the decision below.

## III. THE ADMINISTRATIVE LAW JUDGE'S DECISION

The question before ALJ Ramos was wether Plaintiff was disabled under the Social Security Act. The ALJ engaged in the five-step analysis required by 20 C.F.R. § 416.920(a) to determine whether a claimant qualifies for disability benefits. See R. at 11-24.

> The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ applied these five steps. The ALJ found at Step 1 that Plaintiff had not engaged in substantial gainful activity since July 13, 2014, the date on which she applied for benefits. Id. at 14. At Step 2, the ALJ found that Plaintiff suffered from the severe

2

impairments of obesity, fibromyalgia, and degenerative disc disease in the cervical and lumbar spines.  Id.  The ALJ noted that Plaintiff also claimed an inability to work because of chronic obstructive pulmonary disease, depressive disorder, post-traumatic stress disorder, arthritis in her back, and fibromyalgia.  Id.

The ALJ concluded that Plaintiff suffered from a number of non-severe or non-medically determinable impairments.  Id. at 14-15. While the medical record "referenc[ed]" diabetes, the diagnosis was recent and no evidence indicated "functional limitations" from the disease or that medication could not control high blood sugars.  Id. at 14.  An x-ray had revealed degenerative joint disease in Plaintiff's right shoulder in 2012, but Plaintiff sought no additional treatment and a 2016 consultative examination showed a full range of motion.  Id. at 14-15.  While imaging in 2012 and 2013 showed signs of diverticulitis and fatty changes to Plaintiff's liver, no evidence indicated that Plaintiff continued treatment for gastrointestinal disorders or abdominal pain.  Id.  Though plaintiff had been diagnosed with asthma, complained of shortness of breath, and had a history of chronic obstructive pulmonary disease, testing and other medical evidence showed that Plaintiff's respiratory issues did not cause "more than minimal work-related limitations."  Id.  Plaintiff engaged in "a broad range of activities of daily living[.]" Id.  She also continued to smoke, "which suggests that this condition does not cause more than minimal work-related limitations."  Id.

The ALJ also found that Plaintiff suffered from the medically determinable impairments of depressive disorder, anxiety, and claustrophobia.  Id.  Considered singly and in combination, however, those impairments "do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore

3

nonsevere." Id. The ALJ employed the four broad areas of mental functioning set out in the disability regulations to come to this conclusion. Id. He found that Plaintiff had only a mild limitation in understanding, remembering, or applying information. Id. Plaintiff could pay bills, count change, and use a savings account. Id. She could read and use a computer. Id. A consultative exam revealed that her "recent and remote memory skills were intact." Id. Likewise, Plaintiff had only a mild limitation in her ability to interact with others. Id. Plaintiff's own statements and the observations of examiners, the ALJ found, supported this finding. Id. at 15-16. The ALJ also found only a mild limitation in concentrating, persisting, or maintaining pace. Id. at 16. That same limitation applied to her ability to adapt or manage herself. Id. Plaintiff showed an ability to dress, bathe, and groom herself. Id. She could cook, prepare food, do laundry, shop, manage money, drive, and use public transportation. Id. No objective evidence supported Plaintiff's claims of claustrophobia and panic attacks. Id.

The ALJ assessed the opinion evidence as it related to Plaintiff's mental condition. Dr. Muhammed Saleem, MD, had offered an opinion that found Plaintiff suffered marked difficulties in several areas of daily living, and that she suffered from depressive disorder and social anxiety disorder, among other conditions. Id. at 16-17. The ALJ gave Dr. Saleem's opinion "little evidentiary weight because it is not supported by the evidence of record or his findings upon examining" Plaintiff. Id. at 17. Jeanne Shapiro, PhD, provided a consultative examination of the Plaintiff. Id. In contrast to Dr. Saleem, Shapiro found "that the claimant had no limitations in her ability to understand and follow simple directions and instructions, perform simple tasks, perform complex tasks, attend to a routine and maintain a schedule, and learn new tasks." Id. She found "mild limitations" in other areas.

4

Id.  The ALJ gave great weight to this opinion "because it is a medical opinion and is supported by her findings upon examining [Plaintiff] and by the evidence as a whole."  Id.

Dr. J. Dambrocia, a State Agency psychological consultant who reviewed Plaintiff's file, concluded that she had mild limitations in activities of daily living.  Id.  The ALJ gave little weight to this finding because it relied on outdated criteria and contradicted clinical findings.  Id.  Dr. Dambrocia also found "moderate limitations in" Plaintiff's "ability to complete a workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting."  Id. at 18.  At the same time, he found "no limitations" in Plaintiff's "ability to understand, remember, and carry out very short and simple or detailed instructions[.]"  Id.  She could "maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances," and perform other tasks in and around people without becoming distracted.  Id.  Dr. Dambrocia also found that Plaintiff could "understand and remember instructions, sustain attention and concentration for tasks, relate adequately with others, and adapt to change."  Id.  The ALG gave "some weight" to Dr. Dambrocia's opinion "in determining" Plaintiff's "limitations in the four broad areas of mental functioning[.]"  Id.  Dambrocia, the ALJ found, offered "a medical opinion" which was "reasonably well supported by the evidence of record."  At the same time, "his opinion that" Plaintiff "has moderate limitations for dealing with the public, dealing with change, and completing a normal workday or workweek is rejected because the evidence does not support this opinion."  Id.

5

In the end, the ALJ found that "[b]ecause the [Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas, they are nonsevere[.]" Id.

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically exceeded the severity of a listed impairment in 20 C.F.R. 416.920(d), 416.925 and 416.926. Id.

At step four, the ALJ held that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), "except that she should not climb ladders or scaffolds, work at elevated heights, or balance[.]" Id. at 19. The Plaintiff, the ALJ found, also "should not work in tight, enclosed space." Id. The ALJ evaluated the medical evidence in reaching this conclusion, as well as the opinion evidence. The ALJ gave the opinion of consultative examiner Kalyani Ganesh, MD, "some weight." Id. at 21. Dr. Ganesh opined that Plaintiff had "no limitations for sitting, standing, walking, or using her upper extremities." Id. The ALJ found that the opinion was "a medical opinion and is supported by Dr. Ganesh's findings upon examining the" Plaintiff. Id.

The ALJ also examined the opinion of Sree Devi Chandrasekhar, MD. Id. at 21-22. In July 2016, Dr. Chandrasekhar opined about Plaintiff's ability to lift, carry, walk and sit during an eight-hour workday, placing some restrictions on those actions. Id. at 21. He placed no restrictions on her ability to "reach, handle, finger, feel, push, and pull," and concluded she could "continuously operate foot controls." Id. Plaintiff could never, however, "climb ladders or scaffolds and only occasionally balance," and lung ailments meant she could not be exposed to a variety of irritants Id. Plaintiff, he assessed, could "tolerate occasional exposure" to moving parts and "extreme" cold and heat, and could

6

occasionally "operate a motor vehicle." Id. She could also tolerate "frequent exposure to vibration." After reviewing additional information, Dr. Chandrasekhar in August 2016 produced a new assessment. Id. at 21. He reduced the amount of time Plaintiff could sit and stand during a work day. Id. at 21-22. He also reduced the amount she could lift and carry considerably. Id. at 21. Chandrasekhar also placed additional limitations on other work areas and exposure. Id. at 22. The ALJ gave this opinion "great weight" as "a medical opinion, . . . based on Dr. Chandrasekhar's medical expertise, knowledge of the Social Security disability programs, and review of the available medical evidence[.]" Id. The ALJ also found the opinion "supported by the available medical evidence, and . . . supported by the objective medical evidence[.]" Id. The ALJ also cited his "narrative explanation of the evidence that support[ed] his opinion, and his testimony at the supplemental hearing." Id.

In the end, the ALJ concluded that "the above functional capacity assessment is supported by the clinical findings during physical examination, the claimant's reported activities of daily living, Dr. Ganesh's opinion, and Dr. Chandrasekhar's opinion." Id.

Applying the assigned RFC, the ALJ determined that Plaintiff could not perform any of her past relevant work. Id. at 22-23. Noting that Plaintiff was fifty years old when she filed her application for benefits, the ALJ noted that she was "an individual closely approaching advanced age" at that time. Id. at 23.

Finally, the ALJ addressed the step-five determination of Plaintiff's ability to work considering her residual functional capacity, age, education, and work experience. Id. at 23-24. The ALJ found that Plaintiff could not perform the full range of light work because of the "additional limitations" contained in her RFC. Id. at 23-24. The ALJ then turned to a

vocational expert "[t]o determine the extent to which these limitations erode the unskilled light occupational base[.]" Id. at 24. The vocational expert testified that, with the limitations listed by the ALJ, Plaintiff "would be able to perform the requirements of representative occupations such as cashier II, office helper, and mail clerk," and that these jobs existed in substantial numbers in the national economy. Id. at 24. As such, the ALJ found that, "considering" Plaintiff's "age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Id. The ALJ found therefore found that Plaintiff was not disabled within the meaning of the Social Security Act."

## IV. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether

a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted).

In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**V.  ANALYSIS**

Plaintiff raises three basis issues for the Court's review. The Court will consider each in turn.

### A. ALJ's finding that Plaintiff's Mental Heath Impairments Were Not Severe

Plaintiff first argues that the ALJ erred by finding that none of her mental health diagnoses constituted "severe" impairments, even though multiple mental-health professionals who examined, treated, or viewed records found that those impairments were

severe. These experts also, with the exception of a one-time examiner, found that Plaintiff's medically determinable impairments caused her limitations within the meaning of the Social Security regulations. Plaintiff argues that the ALJ erred in not finding limitations due to Plaintiff's mental illnesses and in failing to incorporate such limitations into Plaintiff's RFC. Such error, she insists, requires remand. The government argues that substantial evidence supports the ALJ's findings in this respect. The record, the government argues, shows that Plaintiff's mental impairments were not severe.

Here, the plaintiff has the burden of proving that her impairments are severe. Green-Younger v. Barnhart, 335 F.3d 99, 105 (2d Cir. 2003).[1] A severe impairment "significantly limits [a person's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). In the area of mental functioning, basic work activities include: "understanding, carrying out, and remembering simple instructions"; "use of judgment"; "responding appropriately to supervision, co-workers and usual work situations"; and "dealing with changes in a routine work setting." 20 C.R.F. 416.922(b)(3-6). "[T]he severity regulation" serves only "to screen out *de minimus* claims." Dixon v. Shalala, 54 F.3d 1019, 1030 (2d cir. 1995)

The ALJ determined that "[t]he claimant's medically determinable impairments of depressive disorder, anxiety, and claustrophobia, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental

---

[1] The Second Circuit has cautioned that cases of depression require special attention because "'[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.'" Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (quoting Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014)).

work activities and are therefore nonsevere." R. at 15. The ALJ assessed the expert opinions in this respect, as well as the medical records. He explained how Plaintiff's alleged mental impairments fit in each of the "four broad areas of mental functioning set out in the disability regulations," citing to evidence in the record to explain each conclusion. Id. at 15-16. He found only "mild" limitations in each of those areas. In in the end, the ALJ concluded that:

> The claimant told the consultative examiner that she has claustrophobia, panic attacks, depression, and memory problems. The claimant's primary care provider mentioned depression during some visits, but there are no significant abnormal findings during mental status exams. In August and October 2012, the claimant's mood was mildly depressed and her affect was constricted. All other findings were normal. More recent records show that her grooming and hygiene are normal. Her motor activity is relaxed. She is cooperative. Her eye contact is good and her speech is normal. Her expressive language skills are normal. Her insight and judgment are fair. Her affect is constricted, but her mood is "pretty good" at times, but "blah" at other times. The clinical findings in the claimant's treatment records suggests that she has no more than mild limitations in the four broad areas of mental functioning.

R. at 16 (internal citations omitted).

The Court finds that substantial evidence supported the ALJ's findings about the severity of Plaintiff's mental impairments. While evidence in the record indicates that Plaintiff suffers some limitations in her ability to apply, remember, and understand information, interact with others, work at pace, and manage herself, the ALJ also pointed to extensive evidence from examinations, treatment records, and testimony which all explained how those limitations did not severely restrict Plaintiff's ability to function. The ALJ also considered Plaintiff's experience as a whole and over a span of time. He did not simply pick out a period when she felt well or note the "good" days she had and then assign that state to her entire existence. Since the ALJ had substantial evidence for his

11

finding on Plaintiff's mental impairments, the Court must accept the ALJ's conclusions in this respect. The Court will therefore deny the Plaintiff's motion for judgment on the pleadings in this respect.

## B. Severity of Plaintiff's COPD and Asthma

Plaintiff next challenges the ALJ's finding that Plaintiff's chronic obstructive pulmonary disease ("COPD") was not severe because she had engaged in a variety of activities and had not stopped smoking. Plaintiff argues that the ALJ ignored Plaintiff's statements that she needed help or took frequent breaks in activities because of her breathing issues. She also contends that the ALJ's consideration of her failure to stop smoking was not appropriate. These errors, Plaintiff contends, caused the ALJ to construct an improper RFC. That improper RFC led to a flawed Step 5 determination. The government responds that substantial evidence in the record supports the ALJ's finding that Plaintiff's COPD was not severe, and that the ALJ properly considered Plaintiff's smoking in reaching this conclusion.

With respect to breathing difficulties, the ALJ found that:

The claimant has been diagnosed with asthma and complains of dyspnea. Other records note that she has a history of chronic obstructive pulmonary disease. However, chest X-rays performed in September 2012 were normal. A pulmonary function test performed in September 2014 showed that the claimant has a FVC of 3.09 and FEV 2.32. There is no suggestion that the claimant's respiratory impairment causes more than minimal work-related limitations. The claimant reports a broad range of activities of daily living and continues to smoke, which suggests that this condition does not cause significant exertional or environmental limitations. The claimant has not met her burden in establishing that her asthma is a severe medically determinable impairment.

R. at 15 (internal citations omitted).

The Court finds that the ALJ had substantial evidence to conclude that the Plaintiff's

12

COPD was not a severe impairment. The ALJ pointed to evidence in the record from various providers, examiners, and examinations that indicated that Plaintiff had some symptoms of breathing difficulties, but that those breathing difficulties were not so severe as to cause her more than minimal restrictions. Plaintiff's own reported daily activities provided evidence to support this conclusion that the condition was not severe. Such evidence amounts to "more than a mere scintilla" of evidence that Plaintiff was not severely limited by her asthma or COPD, and instead for a reasonable mind to find "adequate to support" the ALJ's determination. Richardson, 402 U.S. at 401.

Plaintiff also contends that the ALJ improperly considered her continued smoking in determining whether her breathing difficulties were severe. Defendant cites to cases which indicate that "a claimant's failure to quit smoking will generally be 'an unreliable basis on which to rest a credibility determination.'" Goff v. Astrue, 993 F.Supp.2d 114, 128 (N.D.N.Y. 2012) (quoting Riechl v. Barnhart, No. 02-CV-6169, 2003 U.S. Dist. LEXIS 12610, 2003 WL 21730126, at *3 (W.D.N.Y. June 3, 2003)). These courts recognize that quitting smoking is not easy, and failing to quit does not necessarily on its own provide evidence of the severity of a claimant's breathing difficulties. Id. An ALJ considering smoking in determining credibility is "obliged to consider 'any explanations' for Plaintiff's failure to comply with smoking cessation recommendations." Id. (citing SSR 96-7p. 1996 SSR LEXIS 4). At the same time, "[w]hile . . . a plaintiff's failure to quit smoking, standing alone, is not sufficient to discredit subjective testimony regarding the severity of asthma symptoms, continued smoking may be considered as one of many factors to discredit a plaintiff's testimony when the objective medical evidence also supports that determination." Beshaw v. Commissioner of Social Security, No. 8:15cv566, 2016 WL 4382702 at * 13

13

(N.D.N.Y. Aug. 16, 2016); see also, Kemp v. Commissioner of Social Sec., No. 7:10cv1244, 2011 WL 3876526 (N.D.N.Y. Aug. 11, 2011) ("The fact that plaintiff smoked and continues to smoke also belies her claim that she has severe asthma symptoms. The medical evidence supports that ALJ's conclusion that plaintiff's asthma does not limit her capacity to perform basis work activities and is, therefore, not a severe impairment.")).

The Court finds that the ALJ did not improperly consider evidence of Plaintiff's continued smoking as part of his assessment of the credibility of her claims of breathing difficulties. The ALJ did not discount evidence of COPD or other breathing ailments that other medical evidence proved because Plaintiff continued to smoke, nor did the ALJ discuss Plaintiff's continued smoking outside of the context of the evidence of her breathing problems. Instead, the ALJ found that Plaintiff's continued broad range of daily activities, coupled with her continued smoking, supported the indications in the medical evidence that Plaintiff's breathing limitations were not severe. As in Beshaw, then, evidence of Plaintif's "continued smoking may be considered as one of many factors to discredit a plaintiff's testimony when the objective medical evidence also supports that determination." Beshaw, 2016 WL 4382702 at *14. The Court will therefore deny the Plaintiff's motion for judgment on the pleadings on these grounds as well.

### C. Weight Given to Opinion Evidence

The Plaintiff further argues that the ALJ erred in weighing the opinion evidence. The ALJ, she claims, improperly gave little weight to the opinion of her treating psychiatrist, Dr. Saleem, and erred in giving great weight to Dr. Chandrasekhar's opinion. The Plaintiff also argues that the ALJ improperly substituted his lay opinion for that of the non-examining review doctor, Dr. Dambrocia. The government responds that the ALJ properly gave little

14

weight to Dr. Saleem's opinion, since that opinion was not supported by the medical record, including his own findings. The government argues that Dr. Chandrasekhar's opinions did not contradict themselves and were based on substantial evidence. The government also contends that Plaintiff's misstates Dr. Chandrasekhar's opinion. Finally, the government contends that the medical record supports the ALJ's understanding of Dr. Dambrocia's opinion. In any case, the government argues, adopting the limitations that Dr. Dambrocia provided would not add restrictions that would make Plaintiff disabled.

In deciding what weight to assign the opinion of a treating physician, an ALJ "[f]irst . . . must decide whether the opinion is entitled to controlling weight." Estrella v. Berryhill, 925 F.3d 90, 95 (2d Cir. 2019). The treating physician's opinion "'as to the nature and severity of [an] impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Id. (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (in turn quoting 20 C.F.R. § 404.1527(c)(2)). An ALJ who finds that the a treating physician's opinion is not entitled to controlling weight must then decide how much weight, if any, the opinion deserves. Id. In making this decision, the ALJ is to "'explicitly consider' the following, nonexclusive *'Burgess factors*:'  (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Id. at 95-96 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). In either case, "the ALJ must 'give good reasons in [its] notice of determination or decision for the weight [it gives the] treating source's [medical] opinion.'" Id. at 96 (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)). Failure explicitly to

15

apply the *Burgess* factors does not mandate reversal, however. Id. at 96. A remand for the ALJ to explain his reasons for the weight assigned the opinion is necessary unless "'a searching review of the record'" makes clear "'that the substance of the treating physician rule was not traversed.'" Id. (quoting Halloran, 362 F.3d at 32).

In discussing the weight afforded Dr. Saleem's opinion, the ALJ stated:

Dr. Saleem's opinion is given little evidentiary weight because it is not supported by the evidence of record or his findings upon examining the claimant. He noted in August 2012, that the claimant's speech is coherent and relevant and her memory is intact. He indicated that the claimant's attention and concentration are fair. While the claiman't mood was anxious and her affect was constricted, all other findings were normal. The findings during the consultative examination were normal. During the consultative examination, the claimant's recent and remote memory skills were intact. She was able to recall three of three objects immediately and after four minutes. She was able to repeat six digits forward and four digits backward. The claimant's demeanor and responsiveness to questions was cooperative. Her manner of relating, social skills, and overall presentation was adequate. The claimant's hygiene and grooming were good. Her eye contact was appropriate. Her behavior and posture was normal. The claimant's attention and concentration was intact. She was able to count, perform simple calculations, and perform serial 3s. Her insight and judgment were fair.

R. at 17 (internal citations omitted).

The Court finds that the ALJ properly explained the weight assigned to Dr. Saleem's opinion. As explained above, an ALJ who does not assign controlling weight to the treating physician's opinion must provide good reasons for choosing to assign a lower weight. Here, the ALJ explained that Dr. Saleem's opinion deserved little evidentiary weight, both because Dr. Saleem's own findings did not support the limitations he assigned to Plaintiff and because other evidence of record showed the Plaintiff had more ability to perform tasks than Dr. Saleem concluded she did. The ALJ cited to substantial evidence in the record–the findings of other examiners and examinations–that supported fewer limitations than Dr. Saleem found. Substantial evidence therefore supports the weight that the ALJ

16

assigned to Dr. Saleem's opinion, and the Court will deny Plaintiff's motion in this respect.

In describing the weight afforded Dr. Chandrasekhar's opinion, the ALJ explained:

> This opinion is given great weight in determining the claimant's residual functional capacity because it is a medical opinion, is based on Dr. Chandrasekhar's medical expertise, knowledge of the Social Security disability programs, and review of the available medical evidence, and is supported by the objective medical evidence, Dr. Chandrasekhar's narrative explanation of the evidence that support[s] his opinion, and his testimony at the supplemental hearing. Dr. Chandrasekhar testified at a hearing held on February 14, 2017 at the request of the claimant's representative. He testified that his opinion remained the same as his Augusut 2016 opinion. Dr. Chanrasekhar's testimony on cross examination that he agrees that another doctor reported that the claimant would have some limitations in attention and concentration, difficulty interacting in public and communicating with others is given no evidentiary weight because, he was merely agreeing that another provider indicated the claim had these limitations, not that he endorsed, adopted, or otherwise agreed with the other doctor's opinion. The representative's line of questioning in this regard did not yield any persuasive opinion evidence from Dr. Chandrasekhar regarding the claimant's mental functioning. Dr. Chandrasekhar testified that his opinion remains the same as reflected in the August 2016 response to interrogatories. Dr. Chandrasekhar testified that he saw nothing in the record that would suggest that the claimant's use of a cane is medically necessary. He testified that, because he had the opportunity to review all of the available evidence, he would not defer to the psychological examiner's opinion regarding the claimant's mental limitations. He noted that this was only a single exam and that the claimant has not had mental health treatment.

R. at 22 (internal citations omitted).

The Plaintiff argues that Dr. Chandrasekhar's testimony contradicts the findings in his reports. She cites to testimony that Dr. Chandrasekhar gave in these proceedings. Plaintiff claims that Dr. Chandrasekhar testified that Plaintiff suffered from greater limitations than he found in his reports, and that the ALJ erred in giving great weight to a report that the author contradicted while testifying. Compare R. at 99-106 and 654-662. Dr. Chandrasekhar testified, Plaintiff points out, that a person with radiculopathy of the neck would have difficulty performing daily activities and would need frequent breaks during a work day. He also testified, Plaintiff claims, that she would have difficulty

17

communicating with others and interacting in public. A careful examination of Dr. Chandrasekhar's testimony, however, indicates that the ALJ explained these supposed differences and had substantial evidence for finding that Dr. Chandrasekhar's testimony did not contradict his reports. As the ALJ explained, Dr. Chandrsekhar testified about the limitations that could result from the findings of other doctors, not to his own findings. He did not himself assign those limitations. The ALJ had substantial evidence for reaching this conclusion, and the Court finds no basis for remand because of this finding.

As to the opinion of Dr. Dambrocia, the ALJ gave "little weight" to his findings that Plaintiff suffered from "mild limitations" in activities of daily living and concentration "because":

> Dr. Dambrocia applied the paragraph B criteria that are no longer in effect. Moreover, the clinical findings during the consultative examination suggest that the claimant has no significant limitations in any of the four areas of mental functioning.

R. at 17. After explaining Dr. Dambrocia's findings, the ALJ further found that "[h]is opinion is given some weight in determining the claimant's limitations in the four broad areas of mental functioning because it is a medical opinion and is reasonably well supported by the evidence of record." Id. at 18. The ALJ rejected the "moderate limitations" that Dr. Dambrocia found in Plaintiff's "dealing with the public, dealing with change, and completing a normal workweek . . . because the evidence does not support this opinion." Id.

The Court finds that the ALJ had substantial evidence to support the weight he assigned to Dr. Dambrocia's report. The ALJ noted that Dr. Dambrocia did not examine Plaintiff but instead "reviewed [her] file" in reaching his conclusions about her limitations. R. at 17. The ALJ's conclusion that the limitations on dealing with the public, change and completing a workweek were excessive came after an explanation of the findings of Dr.

18

Jeanne Shapiro, who found fewer and milder restrictions based on her examination of the Plaintiff. Id. Moreover, the ALJ cited to medical evidence in the record in finding only a "mild limitation" in Plaintiff's ability to interact with others; the consultative examination, the ALJ found, revealed that Plaintiff had a "cooperative" demeanor and responses to questions. Id. at 15. Plaintiff's "manner of relating, social skills, and overall presentation was adequate." Id. Other evidence showed that Plaintiff related to the examiner normally, and seemed relaxed and comfortable, which "suggests that the claimant has only a mild limitation" in interacting with others. Id at 15-16. These findings provided the ALJ with substantial evidence to limit the weight of Dr. Dambrocia's conclusions, who did not examine the Plaintiff, but simply reviewed her file.[2] The Court will therefore deny the Plaintiff's motion for judgment on the pleadings on these grounds as well.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **DENIED.** The Commissioner's motion for judgment on the pleadings is **GRANTED**. The Clerk of Court is directed to **CLOSE** the case.

**IT IS SO ORDERED.**

---

[2] The Defendant also argues that any error in this respect was harmless, as the jobs named by the Vocational Expert did not all require the ability to deal with the public on a regular basis. As such, even some limitations in this respect would not render Plaintiff unable to perform all of the jobs cited by the Vocational Expert. The Vocational Expert testified that a person who "continuously or intermittently [was] unable to respond without fear to strangers or interact or participate in like group activities" would be able to perform two of the three classes of jobs that he identified for Plaintiff. R. at 124-125. If, however, such a person also could not communicate clearly and effectively or cooperate with coworkers, that person would not be able to perform any of the listed jobs. Id. at 125. The Court finds this testimony would lead to a finding that any error is harmless. The Vocational Expert testified that only restrictions that were more than moderate would lead to a finding that a person with such limitations could not work.

_____
Thomas J. McAvoy
Senior, U.S. District Judge

**Dated**: February 24, 2020